

FILED
COURT OF COMMON PLEAS

2009 APR 21 A 9: 03

CLERK OF COURT
MONTGOMERY CO. OHIO

200912199
(cjb)

COURT OF COMMON PLEAS
MONTGOMERY COUNTY, OHIO

The Bank of New York Mellon, fka
The Bank of New York as Successor
in interest to JP Morgan Chase
Bank NA as Trustee for Bear
Stearns Asset- Backed Securities
Trust 2005-SD1, Asset-Backed
Certificates, Series 2005-SD1
c/o Wells Fargo Bank, N.A. (SC)
3476 Stateview Boulevard
Fort Mill, SC 29715 Mac# 7801-013

Plaintiff

vs.

Gregory Thomas Ackerman
556 Shadowlawn Avenue
Dayton, OH 45419

Joyce Louise Ackerman
556 Shadowlawn Avenue
Dayton, OH 45419

National City Bank
Law Department
Loc #01-2174
1900 East Ninth Street
17th Floor
Cleveland, OH 44114

Case No. **'09- 3194**

**COMPLAINT IN FORECLOSURE**

Permanent Parcel No. R72-139-8-2-38

«Barcode»

«BarcodeLabel»

Tom Lehman Concepts, Inc. Section
401(k) Profit Sharing Plan
1926 East 3rd Street
Dayton, OH 45403

Inovision
1804 Washington Boulevard, #500
Baltimore, MD 21230

Montgomery County Treasurer
451 West Third Street
Dayton, OH 45422

                Defendants.

## COMPLAINT

### COUNT ONE

1. Plaintiff is the holder of a note, a copy of which is attached hereto as Exhibit 'A'. By reason of default under the terms of the note and the mortgage securing same, plaintiff has declared the debt evidenced by said note due, and there is due thereon from the defendants, Gregory Thomas Ackerman and Joyce Louise Ackerman, $74,507.87, together with interest at the rate of 7.2500% per year from September 1, 2008, and as may be subsequently adjusted pursuant to the terms of the Note, plus court costs, advances, and other charges, as allowed by law.

2

<u>COUNT TWO</u>

2. Plaintiff incorporates the allegations of Count One and further states that the aforesaid note is secured by a mortgage, a copy of which is attached hereto as Exhibit 'B', and that said mortgage constitutes a valid first lien upon the real estate described therein.

3. The mortgage was filed for record on December 5, 1995, in Volume 95-3709, Page D06, of the county recorder's records and it was assigned to the plaintiff herein. The conditions of defeasance contained therein have been broken; plaintiff has complied with all conditions precedent; and plaintiff is entitled to have said mortgage foreclosed. A copy of said Assignments are attached hereto as Exhibits 'C' and 'D'.

4. Plaintiff says that the defendant, Tom Lehman Concepts, Inc. Section 401(k) Profit Sharing Plan, may claim an interest in the above described property by virtue of a mortgage from Gregory Thomas Ackerman and Joyce Ackerman, filed for record on 11/02/92, in Microfiche No. 92-3736, page A01, of said County Recorder's Records. Said mortgage is subordinate to plaintiff's mortgage by virtue of a Subordination Agreement filed for record on 12/05/1995, in Microfiche No. 95-3709, page D08, of said County Recorder's Records. A copy of said Subordination Agreement is attached hereto as Exhibit 'E'.

3

5. Plaintiff says that the defendant, Inovision, may claim an interest in the above described property by virtue of an execution lien against Greg T. Ackerman, filed for record on 10/19/06, in Judgment Lien Docket 2006EX50166, of said County Clerk's Records.

6. Plaintiff says that the defendant, Montgomery County Treasurer, may claim an interest in the above described property by virtue of any unpaid real estate taxes and/or assessments due and owing on the subject property.

7. Plaintiff says that the defendant, National City Bank, may claim an interest in the above described property by virtue of a mortgage from Gregory T. Ackerman and Joyce L. Ackerman, on 07/16/93, in Microfiche No. 93-2752, page E10, of said County Recorder's Records, which lien is believed to be paid off, however, not released of record.

WHEREFORE, plaintiff prays for judgment against defendants, Gregory Thomas Ackerman and Joyce Louise Ackerman, in the amount of $74,507.87, together with interest at the rate of 7.2500% per year from September 1, 2008, and as may be subsequently adjusted pursuant to the terms of the Note, plus court costs, advances, and other charges, as allowed by law; that plaintiff's mortgage be adjudged a valid first lien upon the real estate described herein, that said mortgage be foreclosed; that said real property be ordered sold, and that plaintiff be paid out of the proceeds of

4

such sale; for such other relief, legal and equitable, as may be proper and necessary; and that all the other defendants herein be required to set up their liens or interests in said real estate or be forever barred from asserting same.

_____
Mallory A. Johnson, Trial Counsel
Ohio Supreme Court Reg. #0082567
LERNER, SAMPSON & ROTHFUSS
Attorneys for The Bank of New York
Mellon, fka The Bank of New York as
Successor in interest to JP Morgan
Chase Bank NA as Trustee for Bear
Stearns Asset- Backed Securities Trust
2005-SD1, Asset-Backed Certificates,
Series 2005-SD1
P.O. Box 5480
Cincinnati, OH 45201-5480
(513) 241-3100
(513) 241-4094(Fax)
attyemail@lsrlaw.com

The undersigned hereby certifies that an examination of the public records of Montgomery County, Ohio has been made to determine the ownership of the subject real estate and all parties who may claim an interest therein, and that, in the opinion of the undersigned, all such parties have been named as parties to this action, stating as exceptions any interested parties not so named.

_____
Mallory A. Johnson

BALN-3260-1

# BALLOON NOTE
(Fixed Rate)



**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

NOVEMBER 22                , 1995        DAYTON                         , OH
　　　　[Date]　　　　　　　　　　　　　　　[City]　　　　　　　　　　　[State]

556  SHADOWLAWN AVENUE, DAYTON, OH  45419
　　　　　　　　　　[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    91,000.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is LEGACY MORTGAGE

A CALIFORNIA CORPORATION

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  7.250          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the FIRST          day of each month beginning on JANUARY 01          ,
19 96      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on DECEMBER 01          , 2002          I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at NORWEST MORTGAGE INC., P.O. BOX 5137, DES MOINES, IA  503065137          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ ******620.79          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of
15          calendar days after the date it is due, I will pay a late charge to the Note Holder.

The amount of the charge will be 5.000          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FNMA UNIFORM INSTRUMENT          Form 3260 3/87

.870 (9705).01                                                          Page 1 of 2
VMP MORTGAGE FORMS - (800)521-7291          Initials



BAN2-3260-2

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
GREGORY T. ACKERMAN                          -Borrower

_____ (Seal)
JOYCE L. ACKERMAN                            -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

*(Sign Original Only)*

VMP-870 (9709).01                    Page 2 of 2                    Form 3260 3/87

3344558

BLNA-3266

# BALLOON NOTE ADDENDUM
## (CONDITIONAL RIGHT TO REFINANCE)

THIS BALLOON NOTE ADDENDUM is made this 22ND day of NOVEMBER ,19 95 , and is incorporated into and shall be deemed to amend and supplement the Balloon Note made by the undersigned (the "Borrower") in favor of LEGACY MORTGAGE

(the "Lender")

and dated as of even date herewith (the "Note"). The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date."

I (the Borrower) understand the Lender may transfer the Note, the related Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") and this Addendum. The Lender or anyone who takes the Note, Security Instrument and this Addendum by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

## 1. CONDITIONAL RIGHT TO REFINANCE

At the Maturity Date of the Note and Security Instrument (the "Maturity Date"), I will be able to obtain a new loan ("New Loan") with a new Maturity Date of DECEMBER 1ST , 20 25 , and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Sections 2 and 5 below are met (the "Conditional Refinancing Option"). If those conditions are not met, I understand that the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

## 2. CONDITIONS TO OPTION

If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (1) I must still be the owner and occupant of the property subject to the Security Instrument (the "Property"); (2) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (3) no lien against the Property (except for taxes and special assessments not yet due and payable) other than that of the Security Instrument may exist; (4) the New Note Rate cannot be more than 5 percentage points above the Note Rate; and (5) I must make a written request to the Note Holder as provided in Section 5 below.

## 3. CALCULATING THE NEW NOTE RATE

The New Note Rate will be a fixed rate of interest equal to the Federal National Mortgage Association's required net yield for 30-year fixed rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate"). The required net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

## 4. CALCULATING THE NEW PAYMENT AMOUNT

Provided the New Note Rate as calculated in Section 3 above is not greater than 5 percentage points above the Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my monthly payments then are current, as required under Section 2 above), over the term of the New Note at the New Note Rate in equal monthly payments. The result of this calculation will be the amount of my new principal and interest payment every month until the New Note is fully paid.

**MULTISTATE BALLOON NOTE ADDENDUM - Single Family - Fannie Mae Uniform Instrument**          Page 1 of 2          **Form 3266 12/89**
Amended 3/92

⊖-874 (9304)          VMP MORTGAGE FORMS - (800)521-7291

Initials: 

**5. EXERCISING THE CONDITIONAL REFINANCING OPTION**

The Note Holder will notify me at least 60 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon the Federal National Mortgage Association's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership, occupancy and property lien status. Before the Maturity Date the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount and a date, time and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title policy, if any, and any reasonable third-party costs, such as documentary stamps, intangible tax, survey, recording fees, etc.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Note Addendum.

_____ (Seal)
GREGORY T. ACKERMAN                    -Borrower

_____ (Seal)
JOYCE L. ACKERMAN                      -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

*[Sign Original Only]*

ALLONGE FOR THE PURPOSE OF ENDORSEMENT

LOAN NO:

BORROWER(S):  Gregory T./ & Joyce L. Ackerman
                         Ackerman

NOTE DATE:  November 22,1995 & Disbursed November 29,1995

LOAN AMOUNT:  $91,000.00

PROPERTY ADDRESS:  556 Shadowlawn Avenue, Dayton,Oh 45419

WITHOUT RECOURSE
PAY TO THE ORDER OF
NORWEST MORTGAGE, INC.

LEGACY MORTGAGE CO.

FRANCIS E. KAVANAUGH
BRANCH PRESIDENT

WITHOUT RECOURSE
PAY TO THE ORDER OF

NORWEST MORTGAGE, INC.
By
     Lisa Siddons
     Assistant Secretary

# EXHIBIT B

Parcel ID R72-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/0038                    OHCM-3036-C-1            38.

077615                JOY A. CLARK  38
                      RECORDER

                      95 DEC -5  AM 10: 37

                      MONTGOMERY CO. OHIO
                      RECORDED

------------------------

[Space Above This Line For Recording Data]

## OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **NOVEMBER 22, 1995**
**GREGORY T. ACKERMAN AND JOYCE L. ACKERMAN, HUSBAND AND WIFE**                         . The mortgagor is

whose current mailing address is **556 SHADOWLAWN AVE., DAYTON, OH  45419**

("Borrower"). This Security Instrument is given to **LEGACY MORTGAGE**

which is organized and existing under the laws of **THE STATE OF CALIFORNIA**                         , and whose
address is **NORWEST MORTGAGE INC., P.O. BOX 5137, DES MOINES, IA  503065137**
                                        ("Lender"). Borrower owes Lender the principal sum of
**NINETY ONE THOUSAND AND 00/100**
                          Dollars (U.S. $*****91,000.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **DECEMBER 01, 2002**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in **MONTGOMERY**
                                        County, Ohio:

See attached Exhibit A for description.

TAX STATEMENTS SHOULD BE SENT TO:  NORWEST MORTGAGE INC., P.O.
BOX 5137, DES MOINES, IA  503065137
which has the address of **556  SHADOWLAWN AVENUE      DAYTON**
**Ohio   45419**                                              [Street, City],
          [Zip Code]        ("Property Address");
OHIO-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT
-6R(OH) (9403)      Form 3036 9/90
                    Amended 3/94
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8      Initials  _____        MORT    95-3709    C10

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard o Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender require . The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make p oof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does n t answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Secu ity Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due dat of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Prope ty prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occup y, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupanc , unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumst nces exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the roperty to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's goo d faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lie n created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations co cerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrume t, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankrupt cy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is n cessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any s ms secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' f ees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not hav to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement t the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Ins rance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance cove rage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substan ially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of th mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearl mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender wi accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender. If mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained, Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

ARIOM 04-0          MORT          95-3709          1001          Form 3038 9/90

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, costs of title evidence.

OHC6-3036-C-6

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☐ Other(s) [specify] | |

THIS INSTRUMENT WAS DRAFTED BY: LEGACY MORTGAGE, OH, 280 REGENCY RIDGE DRIVE, SUITE 2000, DAYTON, OH 454590000

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Alexander A. Arestides_                          _Gregory T. Ackerman_ (Seal)
Alexander A. Arestides                              GREGORY T. ACKERMAN        -Borrower

_Jeffrey P. Bohlman_                               _Joyce L. Ackerman_ (Seal)
Jeffrey P. Bohlman                                  JOYCE L. ACKERMAN          -Borrower

_____ (Seal)        _____ (Seal)
                                    -Borrower                                        -Borrower

STATE OF OHIO, MONTGOMERY                             County ss:

On this 22ND day of NOVEMBER , 1995 , before me, a Notary Public in and for said County and State, personally appeared GREGORY T. ACKERMAN AND JOYCE L. ACKERMAN, HUSBAND AND WIFE

, the individual(s) who executed the foregoing instrument and acknowledged that they executed the same and did sign the foregoing instrument, and that the same is their free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission expires:

_Jeffrey P. Bohlman_
Notary Public

Prepared by:        JEFFREY P BOHLMAN, Notary Public
In and for the State of Ohio
My Commission Expires June 1, 2000

Form 3036 8/90

MORT    95-3709    DOJ

3344556                                                     BALR-3180

# BALLOON RIDER
## (CONDITIONAL RIGHT TO REFINANCE)

THIS BALLOON RIDER is made this 22ND day of NOVEMBER , 19 95 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to LEGACY MORTGAGE

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

556 SHADOWLAWN AVENUE , DAYTON , OH 45419

[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

### 1. CONDITIONAL RIGHT TO REFINANCE
At the Maturity Date of the Note and Security Instrument (the "Maturity Date"), I will be able to obtain a new loan ("New Loan") with a new Maturity Date of DECEMBER 1ST , 20 25 , and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Sections 2 and 5 below are met (the "Conditional Refinancing Option"). If these conditions are not met, I understand that the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

### 2. CONDITIONS TO OPTION
If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (1) I must still be the owner and occupant of the property subject to the Security Instrument (the "Property"); (2) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (3) no lien against the Property (except for taxes and special assessments not yet due and payable) other than that of the Security Instrument may exist; (4) the New Note Rate cannot be more than 5 percentage points above the Note Rate; and (5) I must make a written request to the Note Holder as provided in Section 5 below.

### 3. CALCULATING THE NEW NOTE RATE
The New Note Rate will be a fixed rate of interest equal to the Federal National Mortgage Association's required net yield for 3-year fixed rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5 %), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate"). The required net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

### 4. CALCULATING THE NEW PAYMENT AMOUNT
Provided the New Note Rate as calculated in Section 3 above is not greater than 5 percentage points above the Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my monthly payments then are current), over the term of the New Note at the New Note Rate in equal monthly payments. The result of this calculation will be the amount of my new principal and interest payment every month until the New Note is fully paid.

### 5. EXERCISING THE CONDITIONAL REFINANCING OPTION
The Note Holder will notify me at least 60 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon the Federal National Mortgage Association's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership, occupancy and property lien status. Before the Maturity Date the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount and a date, time and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250.00 processing fee and the costs associated with updating the title policy, if any, and any reasonable third-party costs, such as documentary stamps, intangible tax, survey, recording fees, etc.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)          _____ (Seal)
GREGORY T. ACKERMAN        -Borrower          JOYCE L. ACKERMAN        -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower

MULTISTATE BALLOON RIDER - Single Family - Fannie Mae Uniform Instrument          Form 3180 12/89   Amended 3/92
1875 d (07)                                          [Sign Original Only]
                        VMP MORTGAGE FORMS - (800)521-7291

NORT     95-3700     DO3

EXHIBIT A

PARCEL I:

Situate in the City of Dayton, County of Montgomery and State of Ohio and being part of Lot Numbered SIXTY ONE THOUSAND FOUR HUNDRED THIRTY SIX (61436) of the revised and consecutive numbers of lots on the plat of said City of Dayton, being bounded and more particularly described as follows:

Beginning at au iron pin in the west line of said lot, said iron pin is located at the northeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY ONE (63S¹.) of the revised and consecutive numbers of lots on the plat of said City of Dayton and the southeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of said City of Dayton; thence from above said beginning point northwardly with the west line of Lot No. 61436 of said City of Dayton, a distance of fifty one (51) feet to an iron pin located at the northeast corner of Lot No. 63382 of the said City of Dayton; thence eastwardly with the north line of Lot No. 63382 extended a distance of one hundred seventeen and eighty six hundredths (117.86) feet to an iron pin in the east line of Lot No. 61436 of said City of Dayton; thence southwestwardly with the east line of said Lot No. 61436 a distance of fifty one and four hundredths (51.04) feet to an iron pin; thence westwardly and parallel with the north line of this described tract a distance of one hundred fifteen and eighty three hundredths (115.83) feet to the place of beginning, containing one hundred thirty seven thousandths (0.137) acres.

PARCEL I:

Situate in the City of Dayton, County of Montgomery and State of Ohio and being Lot Numbered SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of the revised and consecutive numbers of lots on the plat of said City of Dayton, Ohio.

MORT    95--3700    DOS

# EXHIBIT C

Parcel ID RJ2-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/0038

072616

**Assignment of Mortgage/
Deed of Trust/
Deed to Secure Debt**

*For value received, Legacy Mortgage hereby sells, assigns and transfers to Norwest Mortgage Its
successors and assigns, all its right, title and interest in and to a certain mortgage/deed of trust/deed to
secure debt executed by* ___Gregory J./& Joyce L. Ackerman (married)___
___Ackerman___

___22nd___ *day of* ___November___ *A.D.* _1995_ *and recorded in the office of the Recorder of*
___Montgomery___ *County, State of* ___Ohio___
*in Book* __95-3704__ *at Page* _C|C_ *as Document No.* _____
*on the* __5__ *day of* _DEC_ *A.D.* _1995_

*Signed the* ___22nd___ *day of* ___November___ *A.D.* _1995_

X SEAL  *[signature]*
Debora L. Papp
X  *[signature]*
Kristina R. Meyer

Legacy Mortgage

By *[signature]*
Title _Branch President_

State of __OHIO__
County of __Montgomery__ SS
On this ___22nd___ *day of* ___November___ ____ A.D. 19 __95__
before me, a Notary Public, personally appeared ___Francis E. Kavanaugh___

to me known, who being duly sworn, did say that (he/she) is the __Branch President__
of Legacy Mortgage and that said instrument was signed on behalf of said Legacy Mortgage.

*[signature]*
Notary Public

*Drafted by:* Legacy Mortgage Co.
280 Regency Ridge Drive
Centerville, OH 45459

NANCY L. TURNER, Notary Public
and for the State of Ohio
My Commission expires Jan. 23, 19

JOY A. CLARK
RECORDER
95 DEC -5 AM 10: 40
MONTGOMERY CO OHIO
RECORDED

MORT    95-3704    D06

EXHIBIT A

PARCEL I:

Situate in the City of Dayton, County of Montgomery and State of Ohio and being part of Lot Numbered SIXTY ONE THOUSAND FOUR HUNDRED THIRTY SIX (61436) of the revised and consecutive numbers of lots on the plat of said City of Dayton, being bounded and more particularly described as follows:

Beginning at an iron pin in the west line of said lot, said iron pin is located at the northeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY ONE (63381) of the revised and consecutive numbers of lots on the plat of said City of Dayton and the southeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of said City of Dayton; thence from above said beginning point northwardly with the west line of Lot No. 61436 of said City of Dayton, a distance of fifty one (51) feet to an iron pin located at the northeast corner of Lot No. 63382 of the said City of Dayton; thence eastwardly with the north line of Lot No. 63382 extended a distance of one hundred seventeen and eighty six hundredths (117.86) feet to an iron pin in the east line of Lot No. 61436 of said City of Dayton; thence southwestwardly with the east line of said Lot No. 61436 a distance of fifty one and four hundredths (51.04) feet to an iron pin; thence westwardly and parallel with the north line of this described tract a distance of one hundred fifteen and eighty three hundredths (115.83) feet to the place of beginning, containing one hundred thirty seven thousandths (0.137) acres.

PARCEL II:

Situate in the City of Dayton, County of Montgomery and State of Ohio and being Lot Numbered SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of the revised and consecutive numbers of lots on the plat of said City of Dayton, Ohio.



**EXHIBIT** D

LS&R No.: 200912199

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, **Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. FKA Norwest Mortgage, Inc.**, whose address is 3476 Stateview Boulevard, Fort Mill, SC 29715 Mac# 7801-013, does hereby sell, assign, transfer and set over unto **The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase Bank NA as Trustee for Bear Stearns Asset- Backed Securities Trust 2005-SD1, Asset-Backed Certificates, Series 2005-SD1**, whose address is 3476 Stateview Boulevard, Fort Mill, SC 29715 Mac# 7801-013, a certain mortgage from Gregory T. Ackerman and Joyce L. Ackerman, Husband and Wife, to Legacy Mortgage, dated November 22, 1995, recorded December 5, 1995, in Volume 95-3709, Page C10, in the office of the Montgomery County Recorder, together with the Promissory Note secured thereby and referred to therein; and all sums of money due and to become due thereon, and secured by the following real estate:

**SEE ATTACHED LEGAL DESCRIPTION.**

PROPERTY ADDRESS:
556 SHADOWLAWN AVENUE
DAYTON, OH 45419

IN WITNESS WHEREOF, Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. FKA Norwest Mortgage, Inc. has set its hand this 2nd day of April, 2009.

|  | Wells Fargo Bank, N.A. successor by merger to Wells Fargo Home Mortgage, Inc. FKA Norwest Mortgage, Inc.<br><br>By: _____<br>Herman John Kennerty<br>VP of Loan Documentation |
| --- | --- |

STATE OF  SOUTH CAROLINA

                                          SS.

COUNTY OF YORK

On April 2nd, 2009, before me Kelly A. Ruff, Notary Public, State of South Carolina, personally appeared Herman John Kennerty, VP of Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_Kelly A. Ruff_
Notary Public
My Commission Expires:

This instrument was prepared by:
LERNER, SAMPSON & ROTHFUSS
A Legal Professional Association
P.O. Box 5480
Cincinnati, OH 45201-5480

OFFICIAL SEAL
Notary Public
State of South Carolina
KELLY A. RUFF
My Commission Expires March 10, 2018

**PARCEL I:**

Situate in the City of Dayton, County of Montgomery and State of Ohio and being part of Lot Numbered SIXTY ONE THOUSAND FOUR HUNDRED THIRTY SIX (61436) of the revised and consecutive numbers of lots on the plat of said City of Dayton, being bounded and more particularly described as follows:

Beginning at an iron pin in the west line of said lot, said iron pin is located at the northeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY ONE (63381) of the revised and consecutive numbers of lots on the plat of said City of Dayton and the southeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of said City of Dayton; thence from above said beginning point northwardly with the west line of Lot No. 61436 of said City of Dayton, a distance of fifty one (51) feet to an iron pin located at the northeast corner of Lot No. 63382 of the said City of Dayton; thence eastwardly with the north line of Lot No. 63382 extended a distance of one hundred seventeen and eighty six hundredths (117.86) feet to an iron pin in the east line of Lot No. 61436 of said City of Dayton; thence southwestwardly with the east line of said Lot No. 61436 a distance of fifty one and four hundredths (51.04) feet to an iron pin; thence westwardly and parallel with the north line of this described tract a distance of one hundred fifteen and eighty three hundredths (115.83) feet to the place of beginning, containing one hundred thirty seven thousandths (0.137) acres.

**PARCEL II:**

Situate in the City of Dayton, County of Montgomery and State of Ohio and being Lot Numbered SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of the revised and consecutive numbers of lots on the plat of said City of Dayton, Ohio.

# EXHIBIT E

11/22/95  14:22  T913 636 2013          DAYTON TITLE INC

## 077617

### SUBORDINATION

In Consideration of One Dollar and other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned Tom Lehman Concepts, Inc. Section 401(K) Profit Sharing Plan being the holder of a certain mortgage dated   August 17, 1992   and filed November 2, 1992   by Microfiche No. 92-3736A01 /Volume   , Page of the Mortgage Records of   Montgomery   County, Ohio, upon the following described premises to wit:

See attached Exhibit A for legal description

does hereby waive the priority of said mortgage in favor of a certain mortgage to Legacy Mortgage          made by  Gregory  T.  Ackerman and   Joyce/Ackerman             under a date of   November 22, 1995 , in the amount of $ 91,000.00   and recorded at Microfiche No.          /Volume    , Page         in the mortgage records of   Montgomery   County, Ohio, and upon part of the premises above described so that the lien of Tom Lehman Concepts, Inc. Section 401(K) Profit Sharing Plan          shall be subordinate to the mortgage to Legacy Mortgage                and in the same manner and with like effect as though the said late encumbrance had been executed and recorded prior to filing of record of the mortgage to Tom Lehman Concepts, Inc. Section 401(K) Profit Sharing Plan but with out in any manner releasing or relinquishing the lien of said earlier encumbrance upon said premises.

In Witness Whereof, the said corporation has caused its name to be signed by its   Trustee        this 22nd day of   November  , 1995 .

Signed in the presence of:                Tom Lehman Concepts, Inc. Section 401(K) Profit Sharing Plan

Witness                                  By  THOMAS K. LEHMAN        TRUSTEE

State of Ohio                            County of   Montgomery

Be It Remembered, That on this  22 day of  November , 1995 , before me, the undersigned, a Notary Public, in and for said State personally appeared the above named  Tom Lehman Concepts, Inc. Section 401(K) Profit Sharing Plan       by

THOMAS K. LEHMAN       its   TRUSTEE

who acknowledged the signing of the foregoing instrument to be his/her voluntary act and also that of said corporation for the use and purpose therein mentioned.

TERI L. EVERHART, Notary Public
In and for the State of Ohio
My Commission Expires March 29, 1999

NOTARY PUBLIC

This instrument prepared by Christ L. Lavelle, Attorney At Law

JOY A. CLARK
RECORDER
95 DEC -5 AH 10: 37
MONTGOMERY CO. OH
RECORDED

## EXHIBIT A

Parcel 1

Situated in the City of Dayton, County of Montgomery, State of Ohio and being part of Lot Numbered SIXTY ONE THOUSAND FOUR HUNDRED THIRTY SIX (61436) of the revised and consecutive numbers of lots on the Plat of said City of Dayton, being bounded and more particularly described as follows:

Beginning at an iron pin in the west line of said lot, said iron pin is located at the northeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY ONE (63381) of the revised and consecutive numbers of lots on the Plat of said City of Dayton and the southeast corner of Lot No. SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of said City of Dayton; thence from above said beginning point northwardly with the west line of Lot No. (61436) of said City of Dayton, a distance of fifty one (51) feet to an iron pin located at the northeast corner of Lot No. (63382) of the said City of Dayton; thence eastwardly with the north line of Lot No. (63382) extended a distance of one hundred seventeen and eighty six hundredths (117.86) feet to an iron pin in the east line of Lot No. (61436) of said City of Dayton; thence southwestwardly with the east line of said Lot No. (61436) a distance of fifty one and four hundredths (51.04) feet to an iron pin; thence westwardly and parallel with the north line of this described tract a distance of one hundred fifteen and eighty three hundredths (115.83) feet to the place of beginning, containing one hundred thirty seven thousandths (0.137) acres.

Parcel 2

Situated in the City of Dayton, County of Montgomery, State of Ohio and being Lot Numbered SIXTY THREE THOUSAND THREE HUNDRED EIGHTY TWO (63382) of the revised and consecutive numbers of lots on the plat of the said City of Dayton, Ohio.

MORT      95-3/09      D09